# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## REPORT AND RECOMMENDATION

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

ABC Bus Leasing, Inc., a
Florida corporation,

              Plaintiff,

    vs.

Traveling in Style (TIS) Inc.,
a New York corporation; Joseph
McMillian; Albertha Corneille;
R.V. Williams Jackson; Jasper
Lowry; Roger McMillian; Marie
Blanchard-Green; and Dorothy
Jones Davenport, individually,

              Defendants.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Traveling in Style (TIS) Inc.,
a New York corporation;

              Third-Party Plaintiff,

    vs.

ABC Bus, Inc., a Missouri corporation;
and Frank Sorvino,

     Third-Party Defendant.  Civ. No. 06-4819 (PJS/RLE)

  * * * * * * * * * * * * * * * * * *

## I. Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a special assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(B), upon the Motion of the Third-Party Defendants ABC Bus, Inc. ("ABC Bus"), and Frank Sorvino ("Sorvino"), to Compel Arbitration, and to Dismiss the Complaint of the Third Party Plaintiff Traveling In Style Inc. ("TIS"), pursuant to Rule 12(b), Federal Rules of Civil Procedure, as well as the Motion of TIS to Compel Arbitration, or in the alternative, to Stay this Action Pending Arbitration.

A Hearing on the Motions was conducted on May 8, 2007, at which time, the Plaintiff ABC Bus Leasing Inc. ("ABC Leasing"), appeared by George R. Serdar, and Joseph W. Lawver, Esqs.; the Defendants TIS and Joseph McMillian ("McMillian"), Albertha Corneille, R.V. Williams Jackson, Jasper Lowry, Roger McMillian, Marie Blanchard-Green, and Dorothy Jones Davenport (collectively, "the TIS Individual

Defendants"),  appeared by Steven H. Silton, and Brian N. Niemczyk, Esqs.; and the Third-Party Defendants ABC Bus, and Sorvino, appeared by Mark A. Solheim, Esq.

For reasons which follow, we recommend that the parties' Motions be granted, in part.

## II.  Factual and Procedural Background

ABC Leasing is a Florida corporation that is involved in the financing of motor bus purchases, with its principal place of business being located in Faribault, Minnesota.  ABC Bus is a Missouri corporation that is involved in the distribution of motor bus coaches, with its principal place of business also being located in Faribault, Minnesota.  ABC Leasing, and ABC Bus, are separate legal entities, although TIS contends that those entities are affiliated, and they conduct business under the trade name "ABC Companies."  See, Third Party Complaint, Docket No. 14, at ¶¶1-4; Answer, Docket No. 7, at ¶¶3-11.  Sorvino is a New Jersey resident, and is a Senior Account Executive for "ABC Companies."  On this Record, it is unclear if he is an employee/agent of both, or of either, ABC Bus and/or ABC Leasing. TIS, as well as the individually named TIS Defendants, reside in either New York, or Connecticut.

The case arises out of the purchase, as well as the financing, of three (3) buses: Bus 575, Bus 577, and Bus 583.[1]  TIS purchased the buses from ABC Bus, and the transactions were facilitated by Sorvino -- who, in addition to his work for "ABC Companies," was a member of TIS's Board of Directors.   The buses were not purchased in full, simultaneously, but instead, were acquired by TIS over a period of time.[2]  Each bus had an original purchase price of $411,220.00.

Allegedly, TIS was a start-up company, and accordingly, in order to obtain financing for the purchases of the buses, TIS, and the TIS Individual Defendants, guaranteed the payment of the amount of a promissory note, which was secured by the buses.  On October 14, 2004,[3] McMillian, who is the president of TIS, provided Sorvino with a $15,000.00 check, which allegedly represented a $5,000.00 down payment on each of the three buses.  In January of 2005, TIS was told that it could pick up the first of the three (3) buses in February of 2005, and that it would have to

_____

[1]We refer to the buses at issue by the last three (3) digits of their respective serial numbers.

[2]The parties dispute whether the sale of the three (3) buses was a "global transaction," or was, instead, three (3) separate, and unrelated transactions.

[3]The Third-Party Complaint alleges the date should be 2005 which, we presume, is a typographical error.

- 4 -

provide an additional $40,000.00 down payment.  On February 22, 2005, McMillian allegedly executed two (2) documents concerning Bus 575 -- a conditional sales proposal (the "575 Sales Proposal"), and a purchase Money Agreement (the "575 Money Agreement").  See, <u>Third Party Complaint</u>, at ¶¶55-57.  The 575 Sales Proposal identified TIS as the buyer, but it did not identify the seller, and merely stated that it was "[p]repared by Frank Sorvino" [of] ABC Bus Leasing, Inc., dba ABC Financial Services."  <u>Id.</u> at ¶60.  On February 25, 2005, McMillian accepted the 575 Bus, and signed a limited warranty ("the 575 Limited Warranty").

Over the next several months, TIS allegedly experienced difficulty with the 575 bus as a result of mechanical failures, but was able to remain in business, despite the breakdowns.  Allegedly, TIS was in need of the other two (2) buses in order to continue with its business, so it tendered an $80,000.00 down payment for Buses 577 and 583, and executed security agreements, and limited warranties to that effect, which, allegedly, were identical to those previously signed for the 575 bus.  <u>Id.</u> at ¶¶93, 95.  Over the subsequent months, all three (3) of the buses allegedly experienced repeated mechanical failures which, in turn, necessitated cancellations of several of TIS's contracts, with the resultant issuance of refunds to TIS's customers.   TIS alleges that it brought these problems to the attention of Tony Mongiovi ("Mongiovi"),

who TIS contends is "a regional Vice President for one of the ABC Companies affiliates," and Mongiovi represented that, as a result of the problems that TIS was experiencing with the buses, ABC[4] would "waive" TIS's payment obligations for July, through September of 2005.  Id. at ¶106.

In December of 2005, ABC Leasing contacted McMillian, and informed him that TIS was in arrears on the required payments, and that it would repossess all three (3) of the buses, if the payments were not made.  Id. at ¶109.  McMillian contacted Sorvino, who advised him "not to worry," and that he would "look into it."  Id. at ¶¶110-111.  The buses were repossessed on January 12, 2006.  Id. at ¶112.

After paying $60,000.00 to "ABC Bus Companies," and executing a Promissory Note ("the Note"), which included the amounts allegedly waived in 2005,  the buses were released to TIS.  The buses allegedly broke down again, and TIS was unable to make the entirety of its payments, which were required by the Security Agreements and the Note, and the buses were, again, repossessed on May 8, 2006.  Id. at ¶¶123-134.

TIS, and Tim Wayland ("Wayland"), who TIS alleges is Mongiovi's superior, discussed the situation, and Wayland agreed to release the buses upon payment of

---

[4]Again, it is unclear, on this Record, whether Mongiovi is an employee, or an agent, of ABC Bus, ABC Leasing, "ABC Companies," or of any of the affiliated entities.

$15,000, which was paid by TIS on May 19, 2006.  Again, the buses were allegedly subject to mechanical failures, and the buses were repossessed, for the third time, in October of 2006.  TIS alleges that it has paid $280,615.50 in payments for the three (3) "brand new motor bus coaches that broke down continuously, that were essentially useless to TIS, and which ABC Bus and ABC Bus Leasing failed to repair despite the warranties that were given to TIS."  Id. at ¶138.

ABC Leasing, in its Complaint, asserts that the TIS Defendants have defaulted on their obligations, and it seeks the remaining $1,327,271.00 in fees, costs, and interest, for the unmade payments on the Promissory Note and Security Agreements, which the TIS Defendants entered in order to finance the purchase of the buses.  See, Complaint, Docket No. 1, at ¶2.

In turn, TIS has asserted Counterclaims against ABC Leasing, and third-party claims against ABC Bus, for breach of contract and breach of warranty, as well as a breach of fiduciary duty claim against both ABC Bus, and Sorvino.  See, TIS's Answer and Counterclaim, supra at pp. 31, 36; TIS's Third Party Complaint, Docket No. 14, at pp. 21-25.

In the Purchase Agreements for the 577, and 583 Buses, the parties agreed to resolve "all disputes arising out of or in connection with this Agreement," and that

- 7 -

each party had the right to refer any such dispute to arbitration.  See, <u>Docket No. 33-2</u>, at p. 9.  The agreement specifies that the "company or Seller as used herein" was "ABC Bus, Inc., its parent or one of its subsidiaries or **affiliates**."  <u>Id.</u> [emphasis added].  ABC Bus argues that, pursuant to those purchase agreements, TIS must submit its claims, as to those buses, to arbitration.

As for the 575 Purchase Agreement, ABC Bus represents that it cannot locate a copy that was signed by TIS.  TIS concedes that it "would seem a strained interpretation of the parties' dealings to conclude that, in executing the Bus 577/583 Purchase Agreement, but not a similar agreement with respect to Bus 575, that the parties only intended to split disputes amongst them between the arbitral forum and the courtroom," and that "it would not be inconsistent with the parties['] dealings, the documents they exchanged and executed, and the affidavits submitted herein, to conclude that they intended that Bus 575 related claims would be arbitrated."  <u>TIS'</u> <u>Memorandum</u>, <u>Docket No. 40</u>, at p. 13.

Given the foregoing, ABC Bus, and TIS, appear to agree that most of TIS's claims should be submitted to arbitration, and that any non-arbitrable claims should be stayed, pending a resolution of that arbitration.  However, TIS contends that this entire action, including the dispute between ABC Leasing, and the TIS Defendants,

should be submitted to arbitration, or else it does not agree that the 575 Bus claims, as well as the claims for breach of fiduciary duties, should be submitted to arbitration.

However, ABC Leasing maintains that it is a stranger to the Purchase Agreements between ABC Bus, and the TIS Defendants, which contain the applicable arbitration clauses, and that arbitration, as well as a stay, is inappropriate with respect to the claims arising in their Complaint -- namely, for the TIS Defendants' alleged failure to make their required payments.  Throughout its briefing, as well as at the Hearing, ABC Leasing has stressed that its claims, which arise from the financing documents, are independent of the claims that are subject to arbitration, and therefore, that it should be allowed to prosecute its claims in Court, without submitting the matters to an arbitrator.  In turn, TIS contends that ABC Leasing **was** a party to the Purchase Agreement, and that, alternatively, under a theory of estoppel, ABC Leasing should be bound to arbitrate its disputes arising under the promissory note. Moreover, TIS has asserted the same breach of warranty, and contract claims against ABC Leasing, under the contract, as it has against ABC Bus, and therefore, that judicial economy would best be served by either resolving all the claims through arbitration, or through a solitary Trial.

As a consequence, the parties collectively dispute which claims, and parties, should be forced to submit their claims to arbitration, and whether the remainder of this action should be stayed pending resolution of the arbitration process.

### III.  Discussion

As a preliminary matter, it is clear that at least several claims at issue in this action -- namely TIS's claims, which arise from the agreements concerning Bus 577, and Bus 583, for breach of contract, and breach of warranty, against ABC Bus -- should be submitted to arbitration, pursuant to the dispute resolution provisions of the associated Purchase Agreement, and Bill of Sale.  See, Docket No. 33-2, at p. 9, ¶18; TIS Defendants' Memorandum, Docket No. 48, at p. 10 ("TIS does not dispute that certain claims regarding Bus 577 and Bus 583 are within the scope of the arbitration clause contained therein").  Accordingly, the parties' disputes, which require further analysis, include: 1) whether TIS can be compelled to arbitrate its claims concerning Bus 575, and Sorvino; 2) whether ABC Leasing can be compelled to arbitrate with the TIS Defendants; and 3) whether we should stay any claims not subject to arbitration. We address each issue, in turn.

     A.     Whether the TIS Defendants, and the Third-Party Plaintiffs, Must Submit Claims Concerning Bus 575, and Sorvino, to Arbitration.

- 10 -

1.    Standard of Review.  "The Supreme Court has repeatedly noted that the Federal Arbitration Act was designed to combat longstanding hostility to arbitration by establishing 'a liberal federal policy favoring arbitration agreements.'" Bob Schultz Motors Inc. v. Kawasaki Motors, Corp., USA, 334 F.3d 721, 724 (8th Cir. 2003), cert. denied, 540 U.S. 1149 (2004), citing Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983); see also,  Faber v. Menard, Inc., 367 F.3d 1048, 1052 (8th Cir. 2004);  Gannon v. Circuit City Stores, Inc., 262 F.3d 677, 679 (8th Cir. 2001).  Under the Federal Arbitration Act ("FAA"), "written agreements to arbitrate are 'valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" Gannon v. Circuit City Stores, Inc., supra at 679, quoting Title 9 U.S.C. §2.

As a result, the role of the Court is limited to determining "whether the parties have entered a valid agreement to arbitrate, and if so, whether the existing dispute falls under the coverage of the agreement." Id. at 680; citing Larry's United Super, Inc. v. Werries, 253 F.3d 1083, 1085 (8th Cir. 2001).  In conducting that inquiry, the Court applies "ordinary state law contract principles to decide whether parties have agreed to arbitrate a particular matter." Keymer v. Management Recruiters Int'l, Inc.,169 F.3d 501, 504 (8th Cir. 1999).  However, "the parties' intentions * * * are generously

construed as to issues of arbitrability." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985).

    2. Legal Analysis. ABC Bus contends that the Purchase Agreement, and Bill of Sale for the 575 Bus, which contains an arbitration provision identical to the one contained in the 577/583 Purchase Agreement, the global nature of all three (3) of the transactions, as well as the intent of the parties, evince an agreement to resolve any disputes concerning the buses in arbitration. However, the only written instrument, which contains the arbitration provisions as to the 575 bus, is unsigned by any party to the agreement. See, Docket No. 43-9. Further, McMillian avers that he is "'not aware that there exists in TIS' files a signed version of the Unsigned Bus 575 Purchase Agreement Form and [he] do[es] not recall whether [he] signed a copy of the Unsigned Bus 575 Purchase Agreement Form." See, Affidavit of Joseph McMillian, Docket No. 43, at ¶68.

  Under Minnesota law, "[a] written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable, and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract." Minnesota Statutes Section 572.08; see, Anderson v. Federated Mutual

Insurance Co., 481 N.W.2d 48, 50 (Minn. 1992)("[A]n agreement to arbitrate must be in writing to be enforceable."). However, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." Johnson v. Piper Jaffray, Inc., 530 N.W.2d 790, 795 (Minn. 1995), quoting AT & T Tech., Inc. v. Communications Workers of America, 475 U.S. 643, 648 (1986); cf., Alben v. Mahoney & Emerson, Ltd., 2006 WL 224151 at *2 (Minn.App., January 31, 2006), rev. denied (Minn., April 18, 2006).

Here, the only document concerning the 575 Bus, which contains an applicable arbitration provision, is the Purchase Agreement and Bill of Sale, that was not signed by either party, and that remains blank at both the signature block, as well as the "Purchasers Initials" block on the second page. See, Docket No. 43-9. We also note that ABC Bus has, in its possession, other documents -- such as a sales quote, a limited warranty, and an acceptance of deliverance -- concerning the 575 Bus, which have been signed by the TIS Defendants. See, Affidavit of Frank Sorvino, Docket No. 33, Exhs. B, D, and G.

While it appears likely that TIS received the Purchase Agreement and Bill of Sale, as evident from averments in McMillian's Affidavit, see, Docket No. 50-1, at ¶¶67-68, since TIS's prior counsel had that document in their files, nonetheless, we

have no competent basis upon which to find that McMillian, TIS, or any other party, ever consented to, or reached an agreement to submit any disputes, that arose from the purchase of the 575 Bus, to arbitration based upon an unsigned document.  Cf., Alben v. Mahoney & Emerson, Ltd., supra at *2-3 (affirming District Court's denial of a Motion to Compel, where inference was made that parties did not present a validly executed agreement to arbitrate, since the signed written contract lacked an arbitration provision).   Accordingly, we have no basis to require TIS to submit, to binding arbitration, matters relating to the 575 Bus, in the absence of some document evincing an intent, by TIS, to be so bound.  See, Hudson v. ConAgra Poultry Co., 484 F.3d 496, 500 (8th Cir. 2007)("Nevertheless, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."), quoting Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2002), quoting in turn, Steelworkers v. Warrior & Gulf Nav. Co., 363 U.S. 574, 582 (1960); Johnson v. Piper Jaffray, Inc., supra at 795; Anderson v. Federated Mutual Insurance Co., supra at 50.  Of course, should the parties, in the interests of efficiency, desire to submit their dispute concerning the 575 Bus to arbitration, they may certainly agree to do so of their own accord.  Accordingly, in the absence of a written agreement

containing an arbitration provision, we deny ABC Bus's Motion to Compel Arbitration, as to the 575 Bus.

As to Sorvino, we note that he is not a signatory to any agreement with an arbitration provision, which has been submitted for our review. We further note that TIS asserts a breach of fiduciary duty claim against Sorvino, in both his capacity  as an agent for ABC, as well as a member of TIS's Board of Directors, based upon the events we have detailed. See, <u>Third Party Complaint</u>, <u>Docket No. 14</u>, at ¶¶167-168. In response to Sorvino's Motion to Compel Arbitration, the TIS Defendants do not substantively address whether the claim against Sorvino should be submitted to arbitration, or instead, remain before this Court, and they argue that its fate should be decided in the same forum as those asserted by ABC Bus Leasing. See, <u>TIS Defendants' Memorandum of Law in Response to Motion to Compel</u>, <u>Docket No. 48</u>, at p. 15.

In resolving which forum is appropriate for resolution of the claim against Sorvino, we necessarily must parse that claim between arbitration, and a resolution, here, in this litigation. As to the breach of fiduciary duty claim, insofar as it arises from Sorvino's activities as an agent for ABC Bus in the procurement of Buses 577 and 583, we find that those claims should be resolved in the same forum as it is

asserted against ABC Bus.  Our Court of Appeals has recently recognized that "[a] nonsignatory can enforce an arbitration clause against a signatory to the agreement in several circumstances," including "when 'the relationship between the signatory and nonsignatory defendants is sufficiently close that only by permitting the nonsignatory to invoke arbitration may evisceration of the underlying arbitration agreement between the signatories be avoided.'"  CD Partners, LLC v. Grizzle, 424 F.3d 795, 798 (8th Cir. 2005), quoting MS Dealer Serv. Corp. v. Franklin, 177 F.3d 942, 947 (11th Cir. 1999).

There, the Court found that tort allegations against three (3) officers, whose alleged actionable conduct arose in the course of their roles in managing a company, who had entered into an arbitration agreement, were subject to the arbitration clause of an agreement entered into between the companies.  Id. at 801.  The Court noted that, in light of the strong national policy favoring arbitration, "[b]roadly worded arbitration clauses such as the ones at issue here are generally construed to cover tort suits arising from the same set of operative facts covered by a contract between the parties to the agreement."  Id. at 800.  Here, the breach of fiduciary duty claim against Sorvino, insofar as it relates to his role as an agent of ABC Bus, arises out of the agreement entered between ABC Bus and TIS, and the pertinent arbitration clause is broadly written to encompass "any dispute arising out of in connection with" the Bus

577 and 583 agreements. Accordingly, we find the fiduciary duty claim against Sorvino, as it pertains to his role as an agent of ABC Bus, should be submitted to arbitration.

However, insofar as the breach of fiduciary duty claim arises out of Sorvino's personal duties to TIS, in his capacity as a member of TIS's Board of Directors, that claim is separate and distinct from any obligation to arbitrate, which arises from the arbitration agreements for Buses 577 and 583, to which ABC Bus, and not Sorvino, is a signatory. As to Sorvino's duties, which arise as a member of TIS's Board of Directors, those duties do not arise out of the agreement entered between ABC Bus and TIS, but instead, arise solely from his personal relationship with TIS.

In this aspect, CD Partners, LLC v. Grizzle, supra, is inapposite because, there, "[t]he tort allegations against the three appellants all arise out of their conduct while acting as officers of [the adverse business entity]," who had entered into an agreement possessing an arbitration clause. Id. at 799. Here, instead, Sorvino's alleged breach of fiduciary duty arose from his duties arising as a Board Member of the very party asserting the violation, and not out of duties assumed from his employment with ABC Bus, or any other entity. There is no evidence before us that TIS's Board Members

- 17 -

have any right to demand arbitration for any claims arising between themselves, and the company itself.

Moreover, that claim arises not out of rights created by the agreement, and therefore, the denial of compelled arbitration, as to Sorvino, would not eviscerate ABC Bus's right to submit its dispute with TIS to arbitration. Id. at 798. Accordingly, we recommend that TIS not be compelled to arbitrate its fiduciary duty claim, as to Sorvino, except to the extent that he is liable as an agent of ABC Bus, arising from his actions concerning the agreements for Buses 577 and 583.

> B.     Whether ABC Leasing Must Submit Its Claims Against TIS, and the Individual TIS Defendants, to Arbitration.

>> 1.     Whether ABC Leasing is a Party to the Bus 577/583 Purchase Agreement.

Here, the parties dispute whether ABC Leasing must submit its claims against TIS, as well as the TIS Individual Defendants, to arbitration. The TIS Defendants argue that it would be efficient, and consistent with the policy favoring arbitration, to submit the entirety of this action to litigation. ABC Bus takes no position, while ABC Leasing vehemently denies that it is required to submit to arbitration.

As a preliminary matter, we must decide whether there is a valid agreement, between ABC Leasing and TIS, which would mandate arbitration.  The parties note that none of the documents, which were purportedly entered between TIS and ABC Leasing, included an applicable arbitration provision.  Instead, TIS argues that ABC Leasing was a party to the Bus 577 and 583 Purchase Agreements,  between ABC Bus and TIS, such that we should extend that arbitration provision to ABC Leasing, in resolving their disputes.

We begin by looking at the language of the agreement at issue.  In the applicable agreement, the document itself appears to be drafted by "ABC Companies," and the signature block on the document is blank, but provides that the agreement is accepted by "ABC."  Notably, the bottom of the document lists various entities listed as "ABC Bus, Inc.," with locations spanning the country.  Nowhere in the document is an entity named "ABC Leasing," or "ABC Bus Leasing, Inc.," referenced.  Further, that document also provides that the "[p]urchaser is responsible for obtaining their own financing."  <u>Docket No. 33-2</u>, at p. 8.

However, Schedule A of the Purchase Agreement and the Bill of Sale, contains a definition of the term "Company," which states that the Seller "shall mean ABC Bus, Inc., its parent or one of its subsidiaries or affiliates."  <u>Docket No. 33-2</u>, at p. 9.  TIS

- 19 -

argues that we should interpret this language to bind ABC Leasing to the agreement, as it is an affiliate of ABC Bus.  In turn, ABC Leasing contends that it is a separate legal entity, which has independently entered financing agreements with TIS, as well as the TIS Individual Defendants, and is a stranger to the Bus 577/583 Purchase Agreement.

As a threshold matter, we find that the TIS Defendants have not proffered sufficient evidence to establish that ABC Bus, and ABC Leasing, are "affiliates," or that ABC Leasing is a subsidiary of ABC Bus's parent company.  We note that the term "affiliate" is not defined anywhere in the Bus 577/583 Purchase Agreement, and the term is not employed in the applicable arbitration provision.  Instead, the only entities referenced in the arbitration clause are the "parties," who shall have the right to refer any dispute to arbitration.

In support of their assertion, that the two (2) entities are "affiliates," the TIS Defendants proffer an Affidavit, with various printouts from the website of "ABC Companies," which refer to the "ABC Companies," as a holding company, that "is a consolidation of several brands under this holding company." Zaitz Aff., Exh. 1, at p. 5.  Further, the website states that "ABC Financial Services" offers a "complete range of financial options," which includes conventional financing.  Id. at p. 7.

- 20 -

However, nowhere on any of the pertinent printouts is "ABC Bus Leasing, Inc." referenced.

The TIS Defendants also argue that the same address for ABC Bus, and ABC Leasing, is listed on the respective Missouri and Florida Secretary of State websites, and that each entity has at least one member on the Board of Directors in common. Id. at Exhs. 3 and 4. Notably, there is no assertion by ABC Bus, or ABC Leasing, in their filings, or at the Hearing, that they are not "affiliates," other than their argument that they are two (2) separate and distinct legal entities. Plainly, the TIS Defendants have been able to provide evidence from which it can reasonably be inferred that ABC Leasing, and ABC Bus, have some interrelationship, but we are not satisfied that we can -- on the showing currently before us -- find that ABC Leasing is an "affiliate" of ABC Bus.

Notably, the TIS Defendants cite a dictionary, which defines an "affiliate" as "a business entity effectively controlling or controlled by another or associated with others under common ownership or control." See, Zaitz Aff., Exh. 5. While we need not decide whether this definition is controlling, we note that TIS has not demonstrated, even under this definition, that ABC Bus, and ABC Leasing, either control each other, or are controlled by a common entity, such that they should be

- 21 -

considered "affiliates."  While the websites list one (1) common member on the Board of Directors, we find that fact too slim a reed to bear the weight that the TIS Defendants seek to place upon it.  Moreover, there is no showing, from the website, that "ABC Bus Leasing, Inc." is, in fact, owned or controlled by "ABC Companies," or any other entity, and the mere fact that each entity lists the same mailing address, although telling, does not, of its own accord, establish any measure of common or shared control.

In the absence of any showing, on the crucial aspect of control, we cannot find, for purposes of this Motion alone, that ABC Bus, and ABC Leasing, are "affiliates."[5] In the absence of the crucial proof on this specific point, we recommend that the TIS Defendants' Motion to Compel Arbitration be denied, insofar as it seeks to invoke the arbitration clause as to ABC Leasing as an "affiliate."

2. <u>Whether ABC Leasing Must Arbitrate its Claims, even as a Non-Signatory to the Purchase Agreement</u>.

---

[5]We note that no Motion for limited discovery, as to the nature of control, or relationship, between ABC Bus, ABC Leasing, or "ABC Companies," was ever brought before this Court.

The TIS Defendants also argue that ABC Leasing should be required to arbitrate its claims, as to them, even if, as we have found, ABC Leasing is not a signatory to the agreement containing the arbitration provision.

Our Court of Appeals recently addressed a similar, but opposite, situation in which a non-signatory party wished to enforce an arbitration provision against a signatory party. In arriving at the applicable standard, the Court stated, "a willing signatory seeking to arbitrate with a non-signatory that is unwilling must establish at least one of the five theories described in Thomson-CSF, S.A. v. American Arbitration Association, 64 F.3d 773, 776 (2d Cir. 1995)." CD Partners, LLC v. Grizzle, supra at 799. The applicable theories, by which a non-signatory can be generally required to submit to arbitration, include: 1) incorporation by reference; 2) assumption; 3) agency; 4) veil-piercing/alter ego; and 5) estoppel. See, Thomson-CSF, S.A. v. American Arbitration Association, supra at 776.

In its filings, the TIS Defendants argue that estoppel is the most relevant theory by which to bind ABC Leasing to the arbitration agreement. At least one Court in this District has observed that "a nonsignatory is estopped from denying its obligation to arbitrate when it receives a 'direct benefit' from a contract containing an arbitration clause." M.A. Mortenson Co. v. Gem Mechanical Services, Inc., 2006 WL 1997367,

at *3 (D. Minn., July 14, 2006), citing <u>Thomson-CSF, S.A. v. American Arbitration Association</u>, supra at 776.   However, as the Court found in <u>Thomson-CSF,</u> a non-signatory "cannot be estopped from denying the existence of an arbitration clause to which it is a signatory because no such clause exists."   <u>Id.</u> at 779.

Accordingly, estoppel is not applicable, so as to find that ABC Leasing should be bound to arbitrate, in the absence of ABC Leasing's reliance upon the purchase agreement containing the arbitration provision in asserting its claims.   As our Court of Appeals recently noted:

> In this case, the inverse is true:   Amway, the signatory, is attempting to bind the nonsignatory plaintiffs to the arbitration agreement. Although Amway maintains this is a nondistinction, the Second Circuit noted in Thomson-CSF, S.A. v. American Arbitration Ass'n that the nature of arbitration makes the distinction important:   "Arbitration is strictly a matter of contract; if the parties have not agreed to arbitrate, the courts have no authority to mandate that they do so." 64 F.3d 773, 779 (2d Cir. 1995).   Because the plaintiffs never indicated a willingness to arbitrate with Amway, the estoppel cases cited by Amway are "inapposite and insufficient justification" for binding the plaintiffs to an

> agreement they never signed. Id.; See also Keymer, 169
> F.3d at 504 ("[A]rbitration is a matter of consent, not of
> coercion.").

Nitro Distributing, Inc. v. Alticor, 453 F.3d 995, 999 (8th Cir. 2006).

As a consequence, since ABC Leasing never sought any relief, as a result of the

Purchase Agreement entered by ABC Bus, and the TIS Defendants, we find that ABC

Leasing is not estopped from refusing to submit its claims to arbitration.

In addition, both parties argue over the import of Hellenic Investment Fund, Inc.

v. Det Norske Veritas, 464 F.3d 514 (5th Cir. 2006), where the Court of Appeals for

the Fifth Circuit found that the application of "direct-benefit estoppel" would bind a

non-signatory to arbitrate, when the  parties' claims did not expressly arise out of the

agreement containing the arbitration clause.  In Hellenic Investment Fund, Inc., supra

at 517-18, quoting E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin

Intermediates, S.A.S., 269 F.3d 187, 200 (3rd Cir. 2001) the Court  noted that "direct-

benefit estoppel" applies where "'non-signatories who, during the life of the contract,

have embraced the contract despite their non-signatory status but then,  during

litigation, attempt to repudiate the arbitration clause in the contract.'"

Here, however, the benefits that flowed to ABC Leasing -- namely, its

entitlement to payments made upon the amount of money borrowed -- did not directly

arise from the agreement reached between ABC Bus, and the TIS Defendants, but instead, arose by virtue of its own binding agreements between itself and the TIS Defendants.   While we recognize that the buses at issue, which were purchased through the Purchase Agreements from ABC Bus, were considered collateral under the applicable security agreements, see, e.g., Complaint, Exh. 1, at p. 2, and were likely a predicate for the TIS Defendants' entry into a binding agreement for financing, we find the benefit bestowed by the contract containing an arbitration provision "too attenuated and indirect to force arbitration under an estoppel theory." Zurich American Ins. Co. v. Watts Industries, Inc., 417 F.3d 682, 688 (7th Cir. 2005).   To hold otherwise would obligate all financial institutions, who lend the funds necessary to finance a purchase of some good, where the loan is secured by the item purchased, to be subject to the arbitration provisions of contracts entered into between the borrower and the retailer -- a result which we deem absurd.   Accordingly, we find that ABC Leasing is not obligated to submit its claims, as to TIS, to arbitration, under a theory of estoppel.

In addition, the individual TIS Defendants seek to compel arbitration, as to ABC Leasing's claims against them, as well.   However, we know of no authority, nor has any been brought to our attention, where two (2) parties, who have entered a valid

contract, and who are non-signatories to any agreements with mandatory arbitration agreements, can invoke an arbitration agreement to which it is not a party.  Here, both the individual TIS Defendants, as well as ABC Leasing, are not parties to any agreements containing an applicable arbitration clause and, in the absence of any showing to the contrary, we recommend that the TIS Individual Defendants' Motion to Compel Arbitration, as to ABC Leasing, be denied.

C.   Whether this Action Should be Stayed Pending Resolution of the Arbitration Process.

Once a Court has determined that a dispute falls within the scope of an arbitration agreement, the proceedings in the case, on the issues referable to arbitration, must be stayed pending the completion of arbitration.  See, Title 9 U.S.C. §3; Keymer v. Management Recruiters Int'l, Inc., supra at 1156; Houlihan v. Offerman & Co., 31 F.3d 692, 695 (8th Cir. 1994).  The decision to stay the remaining nonarbitrable claims, pending the outcome of arbitration, is soundly vested in the District Court's discretionary authority to control its docket.  See, Moses H. Cone Memorial Hosp. v. Mercury Construction Corp., supra at 21 n. 23; Summer Rain v. Donning Company/Publishers, Inc., 964 F.2d 1455, 1461 (4th Cir. 1992); see also, Broughton v. Hold Brothers On-Line Investment Services, Inc., 2002 WL 1840853, at *8 (D.

Minn., August 12, 2002).   Expanding the stay, so as to encompass all of the nonarbitrable claims in the case, is appropriate where the arbitrable claims predominate, or where the outcome of the nonarbitrable claims will depend upon the arbitrator's decision.  See, <u>Genesco, Inc. v. T. Kakiuchi & Co., Ltd.</u>, 815 F.2d 840, 856 (2d Cir. 1987); <u>Allied Fire & Safety Equip. Co. v. Dick Enter., Inc.</u>, 886 F. Supp. 491, 498 (E.D. Pa. 1995).

We cannot discount the effect, upon the nonarbitrable claims, that an arbitrator's interpretation of the contracts and warranties, as they apply to Buses 577 and 583, will have on the issues that remain for resolution, especially as to Bus 575. Furthermore, while we have not expressly found that ABC Leasing, and ABC Bus, are "affiliates," such that the arbitration provision should apply to ABC Leasing, we find many closely related issues of fact and law, which arise out of the purchasing,  and the financing of the purchase of the buses, as well as from Sorvino's role in facilitating the transactions which form a common nucleus of fact and law.  This seems especially so, given that the TIS Defendants allege that "ABC would 'waive' TIS' payment obligations for July, August, and September 2005," <u>Third Party Complaint</u>, at ¶107, as a result of the difficulties TIS allegedly encountered in their operation of the buses.

Lastly, the ruling of the arbitrator will necessarily impact upon ABC Leasing's liability, as to the counterclaims asserted against it by TIS, as well as Sorvino's liability, on the breach of fiduciary duty claim.   Accordingly, we find that judicial efficiency, as well as the potential for inconsistent rulings on the interconnected issues, warrants a recommendation that this litigation be stayed until such time as the arbitration process is complete.   See, Contracting Northwest, Inc. v. City of Fredericksburg, Iowa, 713 F.2d 382, 387 (8th Cir. 1983); see also, General Marketing Services, Inc. v. American Motorsports, Inc., 2003 WL 1565943, at *3 (D. Minn., March 5, 2003)("The district court has discretionary authority to grant a stay pending arbitration in "third party litigation [that] involves common questions of fact that are within the scope of the arbitration agreement."), citing AgGrow Oils, L.L.C. v. National Union Fire Ins. Co. of Pittsburgh, P.A., 242 F.3d 777, 782-82 (8th Cir. 2001).

NOW, THEREFORE, It is –

RECOMMENDED:

1.     That the Motion of ABC Bus Inc. and Sorvino to Compel Arbitration, and Dismiss Under Rule 12(b)  [Docket No. 30], be granted, in part, as more fully detailed in the text of this Report.

2.     That the Motion of TIS, and the TIS Individual Defendants, to Compel Arbitration, or in the alternative, to Stay Pending Arbitration [Docket No. 46], be granted, in part, as more fully detailed in the text of this Report.

3.     That this action be stayed, as to the claims not subject to binding arbitration, until such time as an arbitration award has been rendered.


Dated:  August 20, 2007                    s/Raymond L. Erickson
                                           Raymond L. Erickson
                                           CHIEF U.S. MAGISTRATE JUDGE


### NOTICE

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than September 7, 2007**, a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections.  Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing by no later than **September 7, 2007**, unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.